UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-60709-RAR

**NANCY TAYLOR**, *on behalf of herself and all others similarly situated*,

    Plaintiff,

v.

**SERVICE CORPORATION INTERNATIONAL**, *et al.,*

    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

**THIS CAUSE** comes before the Court on Defendants SCI Direct, Inc., Neptune Society Management Corporation, and John Does 1–20's Joint Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 88] ("Motion"), filed on June 14, 2021. Plaintiff filed a Response in Opposition [ECF No. 91] ("Response"), to which Defendants filed a Reply [ECF No. 94] ("Reply"). The Court has carefully reviewed the Second Amended Complaint [ECF No. 84] ("SAC"), the parties' submissions, the record, and applicable law and is otherwise fully advised. For the reasons set forth below, it is hereby

**ORDERED AND ADJUDGED** that the Motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Plaintiff Nancy Taylor entered three contractual agreements with Defendants for the provision of preneed funeral services. *See* SAC ¶ 102. Preneed funeral services are "sold in advance for a specified beneficiary before that beneficiary's death." *Id.* ¶ 34. The first two agreements, the Preneed Funeral Agreement and Retail Merchandise Agreement, were executed

together as part of the Standard Neptune Plan. *See id.* ¶ 9. The third agreement, the Transportation and Relocation Protection Plan ("TRPP"), was sold as an addendum to the Standard Neptune Plan. *See id.* ¶ 19. Plaintiff purchased both plans for a total of $2,643.00, with the amounts broken down as follows: (i) $1,030.05 for services and $1,149.05 for merchandise for the Standard Neptune Plan, and (ii) $463.90 for the TRPP. *See id.* ¶ 106. Plaintiff alleges that, due to Defendants' acts discussed herein, she "enter[ed] contracts she otherwise would not have agreed to." *Id.* ¶¶ 172, 185. The Court discusses each plan in turn below.

## I. The Standard Neptune Plan

Plaintiff, like most of Defendants' customers, purchased the Standard Neptune Plan because it appeared to provide standard cremation services and related merchandise at a discount. *See id.* ¶¶ 51–52. The two contracts that compose the Standard Neptune Plan, the Preneed Funeral Agreement and Retail Merchandise Agreement, are linked in that both must be executed to purchase the Standard Neptune Plan, and any cancellation of the Retail Merchandise Agreement serves to cancel the Preneed Funeral Agreement. *See id.* ¶ 55. The Preneed Funeral Agreement provides cremation services at a rate "that is substantially discounted from the price listed on the price sheet." *Id.* ¶ 54. The Retail Merchandise Agreement is for merchandise, and customers allegedly "pay the full, vastly-inflated, list prices." *Id.* According to Plaintiff, the value of the merchandise "is close to zero," and Defendants' descriptions of the items are "grossly misleading." *Id.* ¶ 18. The effect of this practice—of reducing the price for cremation services and increasing the price for merchandise—allows Defendants to place "only a fraction of the value of the cremation services into trust" and lowers the amount they can receive as a refund or have transferred to another provider if they choose to cancel. *Id.* ¶ 56.

Defendants, however, fail to disclose this information to their customers. *See id.* ¶ 66. Instead, Plaintiff was told that "it did not matter how Defendants allocated the purchase price

between the services and the merchandise because the right to a refund was the same no matter what." *Id.* ¶ 14.  Defendants fail "to disclose to customers in one place on the signature page prior to executing the contract the total amount to be paid, how that amount was allocated between merchandise and services, and to inform customers that they would receive all of the amount allocated to services if cancelled indefinitely whereas they would receive the amounts allocated to the items only if not used and cancelled within 30 days." *Id.* ¶ 70.  The information Defendants did provide—the total amount paid and how that amount was allocated between merchandise and services—was spread across several pages of the agreement.  *See id.* ¶ 71.  Plaintiff was never told that the amount for services must be refunded at any time and instead was misled into believing that this amount, like the amount paid for merchandise, would be refunded "only if cancelled within 30 days." *Id.* ¶ 72.

## II. The Transportation and Relocation Protection Plan

The TRPP, sold as an addendum to the Standard Neptune Plan, "protects the Beneficiary of the Preneed Funeral Agreement from incurring additional out-of-pocket expenses if death occurs while Beneficiary is traveling anywhere in the world or if Beneficiary relocates within the contiguous United States."  *Id.* ¶¶ 19, 84.  Though it is a separate agreement, customers are provided the option to purchase the TRPP when they contract for the Standard Neptune Plan and told they will not have the opportunity to purchase the TRPP later.  *See id.* ¶ 88.  The TRPP agreement notes that it "is being sold separately on behalf of [Medical Air Services Association of Florida, Inc. ("MASA")]" and that it "is [not] a trust funded preneed funeral service or good."  *Id.* ¶ 92.  For each TRPP sold, Defendants "transmit a set fee" to MASA and retain a profit whose percentage varies depending on "the price charged to the customer and collected by Neptune Society."  *Id.* ¶ 98.  The amount Defendants retain "is the majority of the cost charged to the customer."  *Id.* ¶ 21.

### III. The Second Amended Complaint

The SAC asserts eight counts. *In Counts I and II*, Plaintiff alleges that Defendants violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), section 501.201 *et seq.* of the Florida Statutes, through their various misrepresentations, deceptions, and concealment as related to the Standard Neptune Plan and TRPP, respectively. *In Counts III and IV*, Plaintiff alleges that Defendants violated Florida's Funeral, Cemetery, and Consumer Services Act ("Funeral Act"), section 497.001 *et seq.* of the Florida Statutes, by making false and misleading representations and failing to follow the statutory requirements for disclosure in the Standard Neptune Plan and TRPP contracts, respectively. *In Counts V and VI*, Plaintiff alleges that both plans are void as a matter of law and accordingly Defendants were unjustly enriched by the Standard Neptune Plan and TRPP, respectively. *In Counts VII and VIII*, Plaintiff seeks declaratory judgments as to the Standard Neptune Plan and TRPP, respectively.

Defendants seek dismissal on several grounds. First, Defendants argue Plaintiff lacks standing based on the alleged violations of the Funeral Act. *See* Mot. at 2–3. Defendants further contend Plaintiff has inappropriately comingled Defendants and she is estopped from bringing her claims because "she has received and held onto the full benefit of her bargain under all three of her negotiated contracts." *See id.* at 3–5. Defendants next argue Counts I and II should be dismissed because FDUTPA is inapplicable to those causes of action. *See id.* at 6. Defendants also argue for dismissal of Counts II, IV, VI, and VIII based on their contention that all claims related to the TRPP are preempted by the federal Airline Deregulation Act ("ADA"). *See id.* at 17–25. Defendants additionally posit that Counts III and IV should be dismissed for failure to state a claim and, if those arguments succeed, that Counts V and VI for unjust enrichment should accordingly be dismissed because the Court would have determined that the contracts are valid. *See id.* at 32–35. Finally, Defendants contend that Plaintiff's declaratory judgment claims (Counts

VII and VIII) should be dismissed because they are duplicative of Plaintiff's statutory claims. *See id.* at 35.

## LEGAL STANDARD

When reviewing a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). But a court need not accept the plaintiff's legal conclusions as true. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading is facially plausible when the plaintiff states enough facts for the court to draw a "reasonable inference" that the defendant is liable for the alleged conduct. *Id.*

## ANALYSIS

### I. Article III Standing Exists Here

Article III of the United States Constitution limits federal court jurisdiction to actual cases and controversies. U.S. Const. art. III, § 2, cl. 1. Standing, ripeness, and mootness are the three traditional doctrines governing whether a case or controversy exists. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020). Standing implicates "the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Accordingly, a plaintiff must establish standing before a court can consider the merits of a given claim. *See TSG Water Res., Inc. v. D'Alba & Donovan Certified Pub. Accountants, P.C.*, 260 F. App'x 191, 195 (11th Cir. 2007) (noting that subject matter jurisdiction is a threshold concern).

To demonstrate standing, a plaintiff must have (1) suffered an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a

favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). With respect to "injury in fact," a plaintiff must plead facts to show that he suffered an "invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks and citations omitted). To meet the concreteness requirement, a plaintiff must allege either (i) "a tangible harm—a category that is 'the most obvious and easiest to understand' and that includes, among other things, physical injury, financial loss, and emotional distress" or (ii) a "risk of real harm", but (iii) "in the absence of a tangible injury or a risk of real harm, a plaintiff can identify a statutory violation that gives rise to an intangible-but-nonetheless-concrete injury." *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341, 1346 (11th Cir. 2021).

Here, Defendants argue that Plaintiff has not alleged an injury-in-fact based on the Funeral Act violations. *See* Mot. at 2. Specifically, Defendants contend the harm is hypothetical because the injury is based on whether Plaintiff will cancel her preneed contract and seek a refund in the future. *See id.* In other words, Defendants seek to categorize this as either a "risk of real harm" case or a situation where there is no tangible injury but instead "a statutory violation that gives rise to an intangible-but-nonetheless-concrete injury" based on the Funeral Act violations. *Hunstein*, 994 F.3d at 1346. But this mischaracterizes the alleged harm. Plaintiff describes her injury as "being induced to enter contracts she otherwise would not have agreed to." SAC ¶ 172. For example, if not for Defendants' alleged acts, Plaintiff "would not have executed the contracts that she did at the prices she did and/or would have been motivated to negotiate that allocation so as to attribute more of the price to the fully refundable services." *Id.* ¶ 113. Plaintiff is "the proverbial master of [her] complaint," *LaCroix v. Lee Cty., Fla.*, 819 F. App'x 839, 843 (11th Cir. 2020), and Defendants cannot recast her injury because it does not suit them. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("Requiring *a plaintiff* to demonstrate a concrete and particularized

injury caused by the defendant and redressable by the court ensures that federal courts decide only the rights of individuals . . . .") (internal quotation marks omitted) (emphasis added).

Plaintiff's allegation that she would not have entered the contracts in the first place—an economic injury—based on Defendants' alleged statutory violations is sufficient to establish Article III standing within the first category of concreteness, as financial loss is a tangible harm. Indeed, an economic injury is the "epitome" of a concrete injury. *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019). "A person experiences an economic injury when, as a result of a deceptive act or an unfair practice, he is deprived of the benefit of his bargain." *Debernardis v. IQ Formulations*, 942 F.3d 1076, 1084 (11th Cir. 2019).

Even setting aside this plainly tangible harm, this would not be a case of "a bare procedural violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Absent Defendants' alleged violations of the Funeral Act, Plaintiff alleges that she would not have entered the agreements— "a concrete injury . . . in the context of a statutory violation." *Id.* In short, Article III standing exists because Plaintiff has adequately alleged an injury-in-fact fairly traceable to Defendants' acts that is likely to be redressed by a favorable judicial decision.

## II. Plaintiff Has Appropriately Identified Defendants

Although the SAC commingles the allegations against the various Defendants, "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997). As the Court noted in its prior order, the commingling of Defendants posed an issue only because of Plaintiff's allegations regarding civil conspiracy. [ECF No. 82] at 4–5. The SAC has remedied this deficiency to avoid any civil conspiracy allegations. *See generally* SAC. "[A] plaintiff may plead claims against multiple defendants by referring to them collectively, for example by referring to a group of defendants as

'defendants,'" which is exactly what Plaintiff has done here. *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1227 (S.D. Fla. 2014). "Although the [SAC's] allegations may at times attribute certain actions to more than one party, the [SAC's] allegations are specific enough to put . . . Defendants on notice." *Carl's Furniture, Inc. v. APJL Consulting, LLC*, No. 15-60023, 2015 WL 1467726, at *5 (S.D. Fla. Mar. 30, 2015).

Furthermore, Plaintiff can bring her claims against unnamed defendants because it is "clear that discovery w[ill] uncover defendant[s'] identit[ies]." *Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). Eleventh Circuit "precedent has allowed plaintiffs to sue real parties under fictitious names only when use of a 'John Doe' label is, 'at the very worst, surplusage' because the plaintiff's description of the defendant is 'sufficiently clear to allow service of process.'" *Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020) (citations omitted). Here, "John Does 1-20 are subsidiaries or affiliates offering prepaid cremation services and merchandise within the State of Florida." SAC ¶ 28. Discovery will easily reveal the identities of the subsidiaries or affiliates to the named Defendants, allowing for service of process. Thus, Plaintiff has adequately identified Defendants.

### III. Defendants' Estoppel Defense Is Not Ripe for Adjudication

Plaintiff is not estopped from bringing her claims. Estoppel is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1). "Typically, a defendant does not have an opportunity to prove affirmative defenses in a motion to dismiss, as affirmative defenses do not constitute elements of a plaintiff's claim." *Regions Bank v. The 62' Ocean Sport Fish, Hull I.D. No. XY0011462J203*, No. 13-20966, 2014 WL 37748, at *2 (S.D. Fla. Jan. 6, 2014). A determination regarding estoppel would require a factual inquiry inappropriate for consideration at the motion to dismiss stage. *See Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *on reh'g*, 764 F.2d 1400 (11th

Cir. 1985) ("Generally, the existence of an affirmative defense will not support a motion to dismiss.").

### IV. FDUTPA Does Not Apply to the Funeral Act

Plaintiff's FDUTPA claims fail because FDUTPA explicitly excludes the kinds of agreements at issue here. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). FDUTPA provides a civil remedy to individuals who have been aggrieved by unlawful trade practices. *See* Fla. Stat. § 501.211. But the plain language of FDUTPA excludes certain persons and activities from civil liability:

> This part does not apply to: . . .
> (4) Any person or activity regulated under laws administered by:
> (a) The Office of Insurance Regulation of the Financial Services Commission;
> (b) Banks, credit unions, and savings and loan associations regulated by the Office of Financial Regulation of the Financial Services Commission;
> (c) Banks, credit unions, and savings and loan associations regulated by federal agencies; or
> (d) Any person or activity regulated under the laws administered by the former Department of Insurance which are now administered by the Department of Financial Services.

Fla. Stat. § 501.212. The Court interprets statutory language according to its plain meaning, in the context of the entire statute, as assisted by the canons of statutory construction. *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010). Defendants argue that Count I (Standard Neptune Plan) and Count II (TRPP) should be dismissed because FDUTPA is inapplicable to those causes of action. *See* Mot. at 6. The Court discusses each plan in turn below.

*First*, the Standard Neptune Plan. Both components of the Standard Neptune Plan—the Preneed Funeral Agreement and Retail Merchandise Agreement—are preneed contracts, one related to burial or cremation services and the other to burial or cremation merchandise. *See* SAC ¶¶ 54, 56. A preneed contract is "any arrangement or method . . . whereby any person agrees to

furnish funeral merchandise or service in the future." Fla. Stat. § 497.005(61).  Section 497.005(9) defines *burial service* as "any service offered or provided in connection with the final disposition, memorialization, interment, entombment, or inurnment of human remains or cremated remains." *Merchandise* is defined as "any personal property offered or sold by any person for use in connection with the final disposition, memorialization, interment, entombment, or inurnment of human remains or cremated remains."  Fla. Stat. § 497.005(7).

Both agreements are for an "activity regulated under laws administered by" an entity that is not covered by FDUTPA.  Fla. Stat. § 501.212(4).  *See also* SAC ¶ 15 (discussing how the Standard Neptune Plan is administered under chapter 497, "which governs the sale of preneed cremation contracts, the trust treatment of funds received for preneed cremation contracts, and the refunds of such funds in the event of cancellation").  Chapter 497, the Funeral Act, is, in turn, administered by the Department of Financial Services' Division of Funeral, Cemetery, and Consumer Services.  Because a division within the Department of Financial Services indisputably regulates the Standard Neptune Plan, FDUTPA does not apply.  Fla. Stat. § 501.212(4)(d).  Thus, Count I fails as a matter of law.

*Second*, the TRPP.  The TRPP, through MASA, insures the beneficiary against additional costs if death occurs while the beneficiary is traveling or if the beneficiary decides to move outside Florida.  SAC ¶ 84.  Plaintiff alleges that the TRPP is also a preneed contract administered under chapter 497.  *See id.* ¶ 22.  The Court agrees based on the plain language of the statute: a preneed contract is "any arrangement" providing "funeral merchandise or service in the future."  Fla. Stat. § 497.005(61).  Thus, the reasoning discussed above as to the Standard Neptune Plan applies with equal force to the TRPP.

However, Defendants contend that the TRPP is not a preneed contract.  *See* Mot. at 6 n.6. But even if the TRPP is not a preneed contract, it is a form of insurance, which "[t]he Department

of Financial Services and the Office of Insurance Regulation are tasked with enforcing." *Arencibia v. AGA Serv. Co.*, No. 20-24694, 2021 WL 1318225, at *7 (S.D. Fla. Apr. 8, 2021). As an insurance contract, section 501.212(4)(d) of the Florida Statutes excludes the TRPP because it is administered by the Department of Financial Services under chapter 624.

The Office of Insurance Regulation is responsible for all activities concerning insurers or other risk-bearing entities. Fla. Stat. § 20.121(3)(a)(1). Florida statutes define *insurer* to include "every person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance or of annuity." Fla. Stat. § 624.03. MASA, which provides the actual service, *see* SAC ¶ 92, is a person "regulated under laws administered by . . . The Office of Insurance Regulation of the Financial Services Commission," so FDUTPA does not apply. Fla. Stat. § 501.212(4)(a). In other words, the TRPP relates to both a person *and* an activity—the person being MASA and the activity being a preneed contract—regulated under laws administered by entities not covered by FDUTPA. Fla. Stat. § 501.212(4). It is worth noting that the statute—by using the disjunctive "or," *see id.*—does *not* require *both* a person and an activity to remove it from the realm of FDUTPA. *See Brown v. Budget Rent-A-Car Sys., Inc.*, 119 F.3d 922, 924 (11th Cir. 1997) ("[T]he use of a disjunctive in a statute indicates alternatives and requires that those alternatives be treated separately.") (citation omitted); *CMR Constr. & Roofing, LLC v. Am. Cap. Assurance Corp.*, No. 20-00416, 2021 WL 354167, at *2 (M.D. Fla. Feb. 2, 2021) ("The disjunctive 'or' in section 501.212(4) indicates that there are two separate and distinct exclusions from liability under FDUTPA—either 'persons' regulated under laws administered by certain administrative agencies, or 'activities' regulated under the same."). Regardless, the TRPP involves "the business of insurance, and [is] therefore regulated exclusively by the State of Florida." *Arencibia*, 2021 WL 1318225 at *7.

The TRPP is a preneed contract that relates to MASA, the third-party insurance provider. Thus, as a preneed contract, section 501.212(4)(d) excludes the TRPP because it is administered by the Department of Financial Services under chapter 497. Furthermore, as an insurance contract, section 501.212(4)(a) excludes the TRPP because MASA is regulated by laws administered by the Office of Insurance Regulation. "When statutory text is unambiguous, this Court must apply that language as written." *Stansell v. Revolutionary Armed Forces of Colom.*, 704 F.3d 910, 915 (11th Cir. 2013). Accordingly, Count II is dismissed.

### V. Plaintiffs State a Claim under the Funeral Act

Florida law creates a private right of action for violations of the Funeral Act, allowing "any person [to] bring a civil action against a person or company violating the provisions of this chapter." Fla. Stat. § 497.169(1). "Upon adverse adjudication, the defendant shall be liable for actual damages caused by such violation." *Id.* Plaintiff alleges three violations of the Funeral Act.

*First*, Plaintiff alleges that Defendants failed to make certain statutorily required disclosures. As individuals who "sell, advertise to sell, or make an arrangement for services, merchandise, or burial rights on a preneed basis," Defendants are preneed licensees. Fla. Stat. § 497.452(1)(b). Preneed licensees must:

> provide on the signature page of the written contract, clearly and conspicuously in boldfaced 10-point type or larger, the following:
> (a) The words "purchase price."
> (b) The amount to be trusted.
> (c) The amount to be refunded upon contract cancellation.
> (d) The amounts allocated to merchandise, services, and cash advances.
> (e) The toll-free number of the department which is available for questions or complaints.
> (f) A statement that the customer shall have 30 days from the date of execution of contract to cancel the contract and receive a total refund of all moneys paid for items not used.

Fla. Stat. § 497.468(7). Plaintiff alleges that Defendants failed to meet this statutory requirement in the Neptune Standard Plan by failing to disclose (i) the required information on the signature

page; (ii) how the amount paid was allocated between merchandise and services; and (iii) the amounts to be refunded upon contract cancellation. *See* SAC ¶¶ 70–72. Defendants argue that these violations are irrelevant based on the alleged approval of the contract by the Board and Division of Funeral Services. *See* Mot. at 11–12. At the motion to dismiss stage, the Court may take judicial notice of public documents for a limited purpose, but not for determining the truth of those statements. *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 815 n.4 (11th Cir. 2015). Put differently, though the Preneed Funeral Agreement has a stamp that states "APPROVED Board of Funeral, Cemetery and Consumer Services" and is dated September 6, 2012, [ECF No. 88-8], whether the Board of Funeral, Cemetery and Consumer Services actually approved the contract is a question of fact inappropriate for resolution at this stage of the proceedings.

*Second*, Plaintiff alleges that Defendants, in violation of the Funeral Act, both failed to deposit in trust the amounts required and limited the refunds available under the TRPP. *See* SAC ¶ 22. Defendants argue that the TRPP is not a preneed contract and thus is not subject to the requirements of chapter 497. *See* Reply at 9–10. As Defendants state in their Motion, "Defendants dispute Plaintiff's contention that the TRPP constitutes a 'preneed contract' regulated under Chapter 497, but taking Plaintiff's allegations as true for purpose of this argument, any claims premised on the TRPP should be dismissed as exempt under FDUTPA." Mot. at 6 n.6. Defendants cannot have it both ways. It cannot be that the TRPP is regulated under chapter 497 when it suits their arguments and not regulated thereunder when it does not. The TRPP is a preneed contract, which Florida Statutes broadly define as "*any* arrangement or method, of which the provider of funeral merchandise or services has actual knowledge, whereby *any person* agrees to furnish funeral merchandise or service in the future." Fla. Stat. § 497.005(61) (emphasis added). On a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in Plaintiff's favor. *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir.

2019). Accordingly, because the TRPP is a preneed contract, the Court infers that Defendants may have neglected to comply with their statutorily designated duties under chapter 497.

*Third*, the crux of Plaintiff's claims is that Defendants misled their customers by inflating the price of merchandise to avoid placing the appropriate amount into trust. *See* SAC ¶¶ 56, 66. Defendants make a similar argument here: the Retail Merchandise Agreement is not a preneed contract because the merchandise is delivered soon after the contract is executed. *See* Mot. at 32–33. Both contracts were executed as part of the Neptune Standard Plan. *See* SAC ¶ 55. Again, the Court applies statutory "language as written." *Stansell*, 704 F.3d at 915. The Retail Merchandise Agreement is a preneed contract because it was to "furnish funeral merchandise . . . in the future." Fla. Stat. § 497.005(61). Contrary to Defendants' contentions, there does not appear to be any requirement for how far in the future the merchandise must be furnished.

Furthermore, Plaintiff has alleged damages based on her injury: "enter[ing] contracts she otherwise would not have agreed to" because of Defendants' violations. SAC ¶¶ 172, 185. Given these alleged violations and the statutory private right of action for such violations, Defendants' Motion is denied as to Counts III and IV. Plaintiff has adequately stated a claim for violations of the Funeral Act.

## VI. The Issue of Preemption Is Not Ripe for Adjudication

The ADA prohibits states from "enact[ing] or enforce[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b). The words "relating to" "express a broad pre-emptive purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). "Regulation of other individuals or entities, if such regulation will have an effect on price, route or service of a direct or indirect air carrier, is preempted." *ABC Charters, Inc. v. Bronson*, 591 F. Supp. 2d 1272, 1300 (S.D. Fla. 2008). Defendants argue for dismissal based on their contention that the ADA preempts all claims

related to the TRPP. *See* Mot. at 17–25. The Court has already dismissed Count II (the FDUTPA claim). Thus, the only question is whether the ADA preempts the Funeral Act.

Because the TRPP was sold on behalf of MASA, Defendants argue that Plaintiff's claims for relief relate to MASA's prices and services. *See* Mot. at 17. At least as to price, this theory is belied by the allegations in the SAC. Plaintiff alleges that Defendants, in violation of the Funeral Act, both failed to deposit in trust the amounts required and limited the refunds available under the TRPP. *See* SAC ¶ 22. Critically, for each TRPP sold, Defendants "transmit a set fee" to MASA and retain a profit whose percentage varies depending on "the price charged to the customer and collected by Neptune Society." *Id.* ¶ 98. Plaintiff appears to challenge not the rates or services of an air carrier but instead *Defendants'* profits based on the fee Plaintiff was charged. *See id.* So it is possible, looking at the allegations in the light most favorable to Plaintiff—as the Court must—that neither MASA's services nor the set fee provided to MASA (i.e., the price) would be impacted if Plaintiff succeeds on her TRPP claims.

The issue, of course, is that the Court has no way of knowing at this stage of the proceedings. *See In re Checking Acct. Overdraft Litig.*, No. 09-02036, 2010 WL 3377592, at *2 (S.D. Fla. July 1, 2010) ("The issue of federal preemption in these actions cannot be decided 'quickly and cleanly' without reference to evidence in the record. Courts require discovery and, in many cases, trial before making the ultimate determination of whether federal law preempts claims."). Without the benefit of discovery, the Court cannot determine whether the prices and services of MASA—which is not a party to this litigation—would be impacted by the Funeral Act's requirements as applied to the TRPP. Accordingly, Defendants' arguments based on preemption of the TRPP are inapposite.

### VII. Plaintiff's Unjust Enrichment Claims Are Not Subject to Dismissal

Unjust enrichment may be properly pleaded where "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009) (citation omitted). Although a party may recover under an unjust enrichment theory only when there is no valid express or implied-in-fact contract, unjust enrichment and breach of contract may be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid. *See Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013); *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011).

As the Court noted in its prior order, Plaintiff's unjust enrichment claims are "properly before the Court based on the presence of Plaintiff's claim under the Funeral Act. If the latter claim ultimately succeeds—a possibility yet to be foreclosed—the Plaintiff's contract with Defendants could be declared void as a matter of law. Plaintiff would then have an actionable claim for unjust enrichment . . . ." [ECF No. 82] at 4. Accordingly, Defendants' Motion to Dismiss Counts V and VI is denied.

### VIII. Plaintiff's Declaratory Judgment Claims Are Proper

The Declaratory Judgment Act provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," as long as there is an actual controversy. 28 U.S.C. § 2201(a). "[D]istrict courts possess discretion in determining whether and when to entertain an

action under the Declaratory Judgment Act . . . ." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

Declaratory relief is proper when, "[b]ased on the facts alleged, there [is] a substantial continuing controversy between two adverse parties." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999). Here, the SAC properly alleges that there is a live controversy between the parties based on Defendants misleading Plaintiff and failing to (i) disclose certain information; (ii) deposit certain amounts into trust; and (iii) make clear which amounts were refundable. *See* SAC ¶¶ 6–22. The Court rejects Defendants' argument that an action for declaratory relief does not lie when another claim provides Plaintiff with full and adequate relief. *See Johnson v. Geico Gen. Ins. Co.*, No. 08-80740, 2008 WL 4793616, at *3 (S.D. Fla. Nov. 3, 2008). Defendants' position contravenes Federal Rule of Civil Procedure 57: "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." The Court denies Defendants' Motion as to Counts VII and VIII because "the existence of another remedy does not preclude declaratory relief." *Johnson*, 2008 WL 4793616 at *3.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion [ECF No. 88] is **GRANTED IN PART AND DENIED IN PART**. Counts I and II are dismissed *with prejudice*. Plaintiff's Motion for Hearing on Defendants' Motion to Dismiss [ECF No. 95] is **DENIED AS MOOT**. Should Plaintiff wish to file a Third Amended Complaint in conformance with this Order, she must do so by **November 19, 2021**. The Court will address the current stay of discovery [ECF No. 71] upon the filing of a Third Amended Complaint.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 1st day of November, 2021.

_____
**RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE**