**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

NANCY TAYLOR and HAZEL BENJAMIN,
on behalf of themselves and all others similarly
situated,                                                      Case No.: 20-CV-60709-RAR

Plaintiffs,

**CLASS ACTION**

v.

SERVICE CORPORATION
INTERNATIONAL, et al.,

Defendants.

_____

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

        Plaintiffs Nancy Taylor and Hazel Benjamin ("Plaintiffs"), individually and on behalf of

the Settlement Class, file this Unopposed Motion for Final Approval of Class Action Settlement

and Memorandum of Law in Support, and state as follows:

**INTRODUCTION**

        After substantial investigation by Class Counsel, over nearly three years of litigation

involving extensive motion practice before this Court, and multiple mediations, this Court

preliminarily approved the parties' proposed settlement agreement ("the Settlement" or "the

Settlement Agreement"). The Court simultaneously certified two settlement classes (collectively,

the "Settlement Class"). In the months since, notice has been issued to over 86,000 potential

Settlement Class Members,[1] and 10,069 members have filed claims under the Settlement.

_____

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the Preliminary
Approval Order, ECF No. 133, or Settlement Agreement, ECF No. 130-1.

Critically, there are no current objections to the Settlement,[2] and only 502 potential Settlement Class Members submitted valid opt out requests.

As this Court already determined, the Settlement is fair because it delivers real and substantial relief for Settlement Class Members. First, Defendants will provide each Settlement Class Member who filed a claim a full refund of the purchase price paid for their contracts—a primary goal of this litigation. These Settlement Class Members were entitled to a refund of all funds they paid, and there was no limit on the number of Settlement Class Members that could have participated. Second, the Settlement provides for valuable injunctive relief to ensure changed business practices in the form of additional disclosures about Defendants' financial interest in certain products sold. Third, Defendants will provide an online obituary to all Settlement Class Members who did not opt out but chose not to cancel their contracts. Finally, Defendants have agreed to pay all Settlement administration costs, including the costs of providing notice to Settlement Class Members and administering all claims. If it is finally approved, this Settlement will provide relief to over 86,000 Settlement Class Members and will finally conclude this litigation. "Federal courts have long recognized a strong policy and presumption in favor of class action settlements." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011).

As set forth below and in the submissions accompanying the Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, the Court should finally approve the proposed Settlement.

---

[2] One class member initially objected to the Settlement, but later chose to file a claim instead.

## **BACKGROUND**

### I. Procedural History

Plaintiff Nancy Taylor filed this lawsuit on April 6, 2020, ECF No. 1, and filed her First Amended Complaint on July 10, 2020, ECF No. 43. The Parties briefed and litigated a motion to dismiss the First Amended Complaint, ECF No. 51, which the Court granted on March 31, 2021, ECF No. 82. After Plaintiff filed a Second Amended Complaint, ECF No. 84, the Parties again briefed and litigated a motion to dismiss, ECF No. 88. The Court granted in part and denied in part Defendants' motion to dismiss Plaintiff's Second Amended Complaint on November 1, 2021— over a year-and-a-half after the lawsuit was first filed. The remaining, surviving claims are for Florida Funeral Act Violations (Counts III and IV), Unjust Enrichment (Counts V and VI), and Declaratory Judgment (Counts VII and VIII).

The Parties exchanged initial discovery requests and responses beginning in August and September 2020. Discovery was stayed until the Court ruled on the motion to dismiss. When discovery resumed, the Parties continued participating in discovery, with supplemental interrogatory responses and additional document productions. Defendants produced over 12,000 pages of documents. The parties also exchanged information concerning the putative classes, the claims, and defenses via informal discovery. Plaintiff also sat for her deposition on June 2, 2022. On September 21, 2022, in conjunction with the Court's preliminary approval order, Plaintiffs filed a Third Amended Complaint adding a new Class Representative, Hazel Benjamin, and a new Defendant, NCS Marketing Services, LLC D/B/A National Cremation Society.

### II. Arm's-Length Settlement Negotiations

During the extensive litigation of the motions to dismiss, the Parties conducted two mediation sessions with nationally renowned and experienced mediator Rodney Max on January

28, 2021, and February 12, 2021. No settlement was reached in those mediations. The Parties attended a third mediation, starting on March 24, 2022, with renowned and experienced class action mediator Hunter Hughes, III, informed by the Court's decisions on the motions to dismiss and the progress of ongoing discovery. *See* ECF No. 130-2 at 26-30 (Hughes Decl.) (detailing the mediation process). In between and after the sessions, the Parties continued to engage in lengthy negotiations to attempt to resolve this matter.

Throughout the mediation sessions and to the present day, Plaintiffs and their counsel maintain the strength of their claims and those of the Settlement Class, and remain confident that they would prevail if the Parties litigated this case to a final judgment. Plaintiffs and their counsel have conducted the necessary legal research, pursued the discovery required to move for class certification, and fully built the case for trial. However, the hard-fought motions practice, which resulted in the dismissal of several of their claims and required over a year of litigation, underscored the risk that Plaintiffs and the Settlement Class may not prevail at subsequent motion phases, trial, or on appeal.

Throughout the mediation sessions and to the present day, Defendants have maintained that they have meritorious defenses to all of Plaintiffs' claims, including but not limited to evidence of decades of regulatory approval of the alleged improper practices under the Funeral Act, for them as well as numerous other industry participants. Defendants have further maintained that the preneed contracts at issue have been approved by the Florida Board of Funeral, Cemetery, and Consumer Services, as well as the Division of Funeral, Cemetery, and Consumer Services. Defendants have further maintained that Plaintiffs' claims in connection with the TRPP are preempted. Defendants have stated that they have retained various industry experts to substantiate their defenses. Defendants have further stated that Plaintiffs or members of the Settlement Class

would not be entitled to full rescission of their contracts, and stated that they believe they have meritorious defenses to the claims and Rule 23 assertions. Thus, Defendants have taken the position they are providing *more* relief than would otherwise be available through the course of litigation in this matter to the proposed class in a good faith effort to resolve this case. However, as several claims survived past the initial, hard-fought motion to dismiss practice and litigation continued through the years, the defense expended tremendous resources in discovery. Defendants thus have stated that they appreciate that litigation is always risky and expensive.

Based on the parties' respective positions, as well as the Court's rulings on the Motions to Dismiss, the Parties remained interested in settlement, and ultimately negotiated a settlement that resulted in meaningful and fair relief for Plaintiffs and the Class Members following formal and informal mediation.

### III.    Preliminary Approval

The Court preliminarily approved the Settlement on September 20, 2022. ECF No. 133. The Court also approved a Claims Administrator, ordered the Notice Program described below to be implemented, set the deadline for claim submission, approved the Settlement Claim Form, prescribed the objector and opt-out requirements, and set the date for the Final Approval Hearing. *Id.* at 8-16.

As part of its preliminary approval of the Settlement, the Court certified for settlement purposes only two classes, defined as:

**Preneed and Retail Merchandise Plan Settlement Class:**

All persons who, between April 1, 2016 and the present, purchased a Preneed Funeral Agreement and a Retail Merchandise Agreement from Neptune or NCS ("Preneed and Retail Merchandise Plan"), within the State of Florida, excluding all Preneed and Retail Merchandise Plans for which the contracted for cremation services have been performed, and all irrevocable preneed contracts.

AND

**TRPP Settlement Class:**

All persons who between April 1, 2016, and present, purchased a Transportation and Relocation Protection Plan ("TRPP") from Defendants within the State of Florida ("Class Period"), excluding all TRPPs where the beneficiary has already been cremated or buried.

Excluded from these classes are Defendants, its affiliates, subsidiaries, agents, board members, directors, officers, and employees. Also excluded from the class are the District Judge and Magistrate Judge assigned to this case, their staff, and their immediate family members.

*Id.* at 3-4.

## IV.   Administrator

After the Court entered the Preliminary Approval Order, Angeion Group, a nationally recognized class action settlement administrator, was retained to administer the Settlement and Notice Program as directed in the Preliminary Approval Order. *See* ECF No. 133 at 8. To support this Motion, Plaintiffs submit the Declaration of Navid Zivari Re: Settlement Administration ("Angeion Decl.") that provides the information on the Notice Program and responses from Settlement Class Members. *See* Exhibit A. Zivari is a project manager at Angeion responsible for settlement administration in this matter. Angeion Decl. ¶ 1. Plaintiffs also submit a supplemental declaration with updated figures as of January 12, 2023 ("Supplemental Angeion Decl."). *See* Exhibit B.

## V.   CAFA Notice

On September 16, 2022, Angeion compiled and timely sent the required Class Action Fairness Act ("CAFA") notification materials required by 28 U.S.C. § 1715 to the U.S. Attorney General and the Attorneys General of all states and territories. Angeion Decl. ¶ 4.

## VI.    Notice Program

Angeion implemented the Notice Program under the Settlement as ordered by the Court. Defendants provided Angeion with a list of each potential Class Member's name, address, phone number, plan, and transaction information. Angeion Decl. ¶ 5. Using this list, Angeion mailed 86,251 Notices of Proposed Class Action Settlement and Final Approval Hearing, including the Claim Form and Release ("Notice Package"), in the form approved by the Court to potential Settlement Class Members. *Id.* at ¶ 7. A copy of the Notice Package that was sent to potential Settlement Class Members is attached as an Exhibit to the Angeion Declaration. *Id*. at Ex. B.

Angeion further established a Settlement website, www.funeralagreementsettlement.com/ ("Settlement Website"), where Settlement Class Members could go to review pertinent documents relating to the Settlement and submit claims electronically. The home page contains a summary of the Class Notice. It also provides links to an Important Dates summary; Frequently Asked Questions; Important Documents (including the Preliminary Approval Order, Settlement Agreement and Release with exhibits, and Class Counsel's motion for attorney's fees); the electronic Claim Form submission page; and the contact email, toll-free number, and address for contacting Angeion. The Settlement Website will remain in service, and has been updated as necessary, through the end of settlement administration, which is ongoing.

Angeion will continue to receive Settlement Class Member correspondence and respond as appropriate through final administration of the Settlement. Angeion established and maintained a toll-free telephone system containing recorded answers to frequently asked questions and options to speak to representatives directly. This telephone number was provided to Settlement Class Members in the Class Notice and is identified on the Settlement Website. The deadline to submit claim forms was December 30, 2022.

## VII.  Opt-Out Requests

After accounting for duplicate submissions, Angeion received Opt-Out requests from 502 Settlement Class Members that were deemed valid, timely, and meeting the requirements set forth in the Settlement Agreement and approved by the Court in the Preliminary Approval Order. Angeion Supplemental Decl. at ¶ 4; *see also* ECF No. 133 at 13-16. Furthermore, no potential Settlement Class Member is currently objecting to the Settlement.[3]

## VIII.  Final Approval Order

The Parties attach as **Exhibit C** to this Motion a proposed Final Approval Order that is substantially the same form attached to the Agreement filed with their Motion for Preliminary Approval. *See* ECF No. 129-1 at 60. The order calls for final certification of the Settlement Class; a finding that the Settlement is fair, adequate, and reasonable; granting Plaintiffs' Motion for Attorney's Fees and Costs (ECF No. 135); and a finding that implementation of the Notice Program constituted the best practicable notice to Settlement Class Members under the circumstances of this Action.

### MEMORANDUM OF LAW

## I.  Class Certification

The Parties request that the Court finally certify the Settlement Class for settlement purposes only under Federal Rule of Civil Procedure 23. No changes have occurred since the Court's prior provisional certification ruling that would warrant departing from the Court's prior findings that the Settlement Class meets all of elements of Rules 23(a) and 23(b)(3) for settlement purposes. *See* ECF No. 133 at 4-8.

---

[3] *See supra* FN 2.

II.      **The Parties Provided the Best Notice Practicable Under the Circumstances.**

Before a court can exercise jurisdiction over the claims of absent class members, certain minimal procedural due process requirements must be satisfied. *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1378 (S.D. Fla. 2007). Federal Rule of Civil Procedure 23(c)(2) requires that notice to Settlement Class Members be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." However, "even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012). Instead, notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011).

Here, the Notice Program, including the multiple avenues of notice and content of the Class Notice, satisfied Rule 23 and due process requirements. *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1261-62 (S.D. Fla. 2016) ("Courts have routinely held that notice programs that provide notice through a variety of media . . . satisfy the requirements of Federal Rule of Civil Procedure 23."). First, the Notice Package was directly mailed to Settlement Class Members. To do so, Defendants provided Angeion with addresses for all Settlement Class Members from Defendants' transactional records. Angeion Decl. ¶ 5. Angeion then updated those addresses using the National Change of Address database. *Id.* at ¶ 6. After updating the addresses, Angeion was able to identify and send, via USPS First Class Mail, Notice Packages to 86,251 potential Settlement Class Members. *See Janicijevic v. Classica Cruise Operator, Ltd.*, No. 20-CV-23223, 2021 WL 2012366, at *2-3 (S.D. Fla. May 20, 2021) (finding due process met through First Class Mail

notice); *Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1287 (11th Cir. 2007) (same); *Braynen v. Nationstar Mortgage, LLC,* 14-CV- 20726, 2015 WL 6872519, at *6 (S.D. Fla. Nov. 9, 2015) (same).

Second, Settlement Class Members also received notice through the Settlement Website, which included relevant important documents, online claims submission, FAQs, a schedule of important dates, summary of the long form notice mailed in the Notice Package, and a toll-free number with an opportunity to speak to live operators. *See Janicijevic*, at *2-3; *Braynen*, at *6; *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014).

The Notice Package and the Settlement Website gave Settlement Class Members all information reasonably necessary to decide whether to remain in the Settlement Class and be bound by the final judgment or opt out, and whether to object to any aspect of the Settlement. *See Faught*, 668 F.3d at 1239. The Class Notice defines the Settlement Class; describes the allegations of the operative complaint; informs Settlement Class Members of their right to opt-out and object, the procedures and deadlines for doing so, and the time and place of the Final Approval Hearing; informs Settlement Class Members of their rights to enter an appearance through their own counsel, if they desire; describes the attorney's fees being sought by Class Counsel including the maximum amount; tells them how to submit a claim for Settlement Benefits and the deadline for doing so; notifies them that a final judgment would bind them unless they opt out; and tells them how and where they can obtain more information including a toll-free number and the Settlement Website, which contains, inter alia, a full copy of the Settlement Agreement with all exhibits and Class Counsel's fee motion. *See* ECF No. 130-1 at 47. The best practicable notice has been provided, and due process is satisfied.

### III.   The Settlement is Fair, Reasonable, and Adequate.

The law has long been settled in the Eleventh Circuit: "In determining whether to approve a proposed [class action] settlement, the cardinal rule is that the district court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Perez*, 501 F. Supp. 2d at 1379 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).  A court's determination of these questions should be informed by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 434 (11th Cir. 2012) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Janicijevic*, 2021 WL 2012366, at *3 (citations omitted); *accord Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988) (internal citations omitted). "Under Rule 23(e)(2), settlements may be approved if the Class was adequately represented and the settlement was negotiated at arm's length, and if the relief provided is adequate under the factors outlined in Rule 23(e)(2)(C)." *Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *7 (S.D. Fla. July 13, 2021). These Rule 23(e)(2) factors are essentially subsumed by the six factors the Eleventh Circuit has identified (in addition to the absence of fraud or collusion) that a district court should examine when assessing whether a proposed settlement is fair, adequate, and reasonable. *Id.*, at *7-8. These factors include:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation;

(5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.  "In evaluating these considerations, the district court should not try the case on the merits."  *Behrens*, 118 F.R.D. at 539 (citing *Cotton*, 559 F.2d at 1330).  Rather, "the district court may rely upon the judgment of experienced counsel for the parties . . . [and] [a]bsent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." *Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (citing and quoting *Nelson* and *Cotton*) (internal quotations marks omitted).  And "where the settlement previously has been preliminarily approved, the settlement is presumptively reasonable." *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-MDL-1317, 2005 WL 2451960, at *5 (S.D. Fla. July 8, 2005).

The Court has already granted the Settlement preliminary approval, finding it sufficiently reasonable to warrant notifying Settlement Class Members.  Nothing has changed that would alter this finding.  *See Gonzalez v. TCR Sports Broad. Holding, LLP*, 1:18-CV-20048, 2019 WL 2249941, at *5 (S.D. Fla. May 24, 2019).  Because all six factors favor final approval, the Parties, through experienced class counsel, respectively submit that the Court should finally approve the Parties' Settlement and enter the proposed Final Approval Order.

### a.  The Settlement is the product of serious, informed, non-collusive negotiations, litigation, and adequate representation.

As set forth above, the Settlement resulted from intensive, arm's-length negotiations among very experienced attorneys with the assistance of highly experienced mediators at three mediation sessions (the last of which lasted, on and off, for many months). *See Wilson v. EverBank*, 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (mediator's involvement showed arm's length negotiation process). The negotiations produced a result that Plaintiffs and their

counsel believe to be in the best interests of the proposed Settlement Class, taking into account the costs and risks of continued litigation. *See Shaw v. Set Enters*, No. 15-CIV-62152, 2017 WL 2954675, at *1 (S.D. Fla. June 30, 2017) ("courts should [also] give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Indeed, the mediator's sworn affidavit confirms that negotiations were contentions, non-collusive, and conducted at arm's length to avoid further costs and risks. Hughes Decl. at 5. And importantly, attorney's fees were negotiated separately and independently from substantive relief to the Settlement Class. *See id.* at 6.

Defendants' counsel are experienced in complex and class action litigation. In this case, the Parties negotiated settlement terms only after extensive and contentious investigation and litigation of the facts and law, document production and review, and a deposition of Plaintiff Taylor. These efforts provided Plaintiffs and their experienced counsel with more than sufficient information to analyze thoroughly the strengths and weaknesses of Plaintiffs' claims, and subsequently negotiate a fair and adequate Settlement to propose to the Court.

The relief terms themselves stated above show the negotiations were at arm's length and the Settlement Class are adequately represented. *See Gayle v. Meade*, No. 20-21553-CIV, 2021 WL 6101368, at *11 (S.D. Fla. Dec. 3, 2021); *Montoya v. PNC Bank, N.A.*, No. 14-cv-20474, 2016 WL 1529902, at *9 (S.D. Fla. Apr. 13, 2016). Relief is complete. And the Settlement does not improperly grant preferential treatment to segments of the Settlement Class or the Class Representatives. All Settlement Class Members are entitled to the same relief.

**b.** ***Bennet* Factor 1: Plaintiffs faced significant risk at trial.**

Success at trial was far from guaranteed, underscoring the fairness of the Settlement here as to the first *Bennett* factor. This Court dismissed several of Plaintiffs' claims across two heavily

litigated motions to dismiss. *See* ECF No. 82 at 5; ECF No. 99 at 17. The case's novelty posed additional risks for the remaining claims. Class Counsel is unaware of any other class actions filed under the Florida Funeral Act. ECF No. 136 at 3. The Class therefore risked adverse rulings in response to novel defenses that could have foreclosed or significantly reduced any recovery. The mediator shared this view, noting in his sworn statement that "both sides possessed strong, non-frivolous arguments, and that neither side was assured of victory on all the claims." Hughes Decl. at 3-4.

Moreover, because the Settlement offers a full refund to all Class Members who filed a valid claim, Class Members would be unlikely to recover more actual monetary damages than available under the Settlement. The significant risk that Class Members would recover less damages—or nothing at all—at trial favors approval of the Settlement. *See Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015) (approving settlement where relief exceeded what class member may receive at trial); *Saccoccio*, 297 F.R.D. at 693 ("The range of possible recovery spans from a finding of nonliability to a varying range of monetary and injunctive relief. In considering the question of a possible recovery, the focus is on the possible recovery at trial.").

c.  ***Bennett* Factors 2 and 3: Recovery under the circumstances is significant and fair.**

The Settlement meets the second and third factor's critical test in gauging its fairness and reasonableness. As detailed above, seen in total, the Settlement provides concrete relief that directly addresses the claimed harm. *See Lipuma v. Am. Express Co*., 406 F. Supp. 2d 1298, 1322-23 (S.D. Fla. 2005) (noting that the second and third *Bennett* factors often may be combined and analyzing settlement for "benefits to the Class."). Plaintiffs' overarching claim in this lawsuit is that they and Settlement Class Members were induced to enter these contracts under terms they otherwise would

not have agreed to as a result of Defendants' alleged non-compliance with statutory disclosure requirements. This alleged harm will be directly remedied under the Settlement, as the Settlement has already informed all Settlement Class Members about the nature of the claims, informed Settlement Class Members about the differences in their cancellation rights between cremation services and retail merchandise notwithstanding whatever disclosures were made at the time of purchase, and informed Settlement Class Members that Defendants were being compensated from the sale of the third-party TRPP.

Defendants will provide a full refund to the 10,069 Settlement Class Members who submitted a claim to cancel their Preneed Funeral Agreement, Retail Merchandise Agreement, or TRPP and timely return the merchandise. *See* Angeion Supplemental Decl. at ¶ 3. For most of the 10,069 Settlement Class Members who filed a claim and comply with their obligations to return, this would be a potential refund of approximately $2,100 on average per class member (it is undisputed that the portion of the refund for the Preneed Funeral Agreement is something the class members were entitled to as a matter of law irrespective of this litigation). The remaining 75,680 Settlement Class Members who chose not to cancel their agreements will be provided with entitlement to an online obituary, as part of the Settlement.

The Settlement also provides for valuable injunctive relief in the form of changed business practices. More specifically, to the extent Neptune or NCS continue to sell the TRPP on behalf of MASA in the State of Florida using substantially the same form as that used with the Plaintiffs here, within sixty (60) days of the Effective Date of this Settlement Agreement, Neptune and NCS will amend the TRPP contract forms sold on behalf of MASA to include a specific disclaimer stating the following or substantially similar language: "As a third party seller of MASA, the seller has a financial interest in and receives compensation based on the sale of this Plan." This Court

has approved settlements that provide similar relief. *Ferron*, 2021 WL 2940240, at *27 ("The fact that the Settlement secures for the Class significant monetary relief and ensures that Defendant will remove or correct the Challenged Language from its Products weighs heavily in favor of approving the Settlement.").

The Settlement treats Settlement Class Members equitably to one another by providing them with an equal opportunity to obtain both the equitable and monetary relief offered. *See Poertner*, 618 Fed. Appx. 624, 628 (11th Cir. 2015) *cert. denied* 136 S. Ct. 1453 (2016) (approving claims-made settlement noting relief exceeded what class member may receive at trial); *see also Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 696 (S.D. Fla. 2014) ("Numerous Courts in this district have required claims forms to be submitted by class members."); *Ferron*, 2021 WL 2940240, at *4 (approving settlement providing relief based on submitting a "valid Claim Form"). The Settlement also benefits Class Members by providing immediate relief in lieu of several more months or years of protracted litigation and appeals and the risk of significantly lower recovery. *See Lipuma*, 406 F. Supp. 2d at 1322 ("the existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable."); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1345 (favorably citing proposed settlement's "immediate and substantial benefits" in contrast with years of continued litigation.). And no Settlement administration costs or attorneys' fees or costs will be deducted from any relief provided to Settlement Class Members. *See* ECF No. 130-1 at 17-18; ECF No. 135 at 16.

### d. *Bennett* Factors 4 and 6: Continued litigation would pose significant expenses for the Parties, and the settlement stage favors final approval.

As noted above, the Parties have already heavily litigated this case for several years, incurring substantial expenses for briefing and discovery. The Parties fully briefed two motions to

dismiss. Detailed mediation also allowed the Parties to understand and develop the strengths and weaknesses of their case. *See Carter v. Forjas Taurus S.A.*, No. 1:13-CV-24583-PAS, 2016 WL 3982489, at *9 (S.D. Fla. July 22, 2016) (approving settlements where litigation allowed parties to address and debate "the strengths and weaknesses of each side's claims and defenses."); *Wilson*, 2016 WL 457011, at *7 (noting litigation for one year to be sufficient time); *see also* Hughes Decl. at 3-4 (addressing details of mediation and parties' evaluation of the strengths and weaknesses of their positions). All the foregoing gave each side more than "sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Wilson*, 2016 WL 457011, at *7. The fourth and sixth factors thus favor final approval.

     e. ***Bennett* Factor 5: The positive reaction to the settlement favors final approval.**

     Finally, the reaction to the Settlement has been overwhelmingly positive, which satisfies the fifth factor and strongly supports final approval. *See Gonzalez*, 2019 WL 2249941, at *5 (noting "lack of opposition, and implicity overwhelming Settlement Class Member support, weighs strongly in favor of the Court's approval of the Settlement Agreement."). There are no current objections to any aspect of the Settlement from any of the potential 86,251 Settlement Class Members mailed notice.[4] *See Jairam v. Colourpop Cosmetics, LLC*, No. 19-CV-62438-RAR, 2020 WL 5848620, at *7 (S.D. Fla. Oct. 1, 2020) (noting lack of objections weighs strongly in favor final approval); *Perez*, 501 F. Supp. 2d at 1381 (noting that "A low percentage of objections demonstrates the reasonableness of the settlement."). Nor has any governmental authority intervened or objected. There have only been 502 valid opt outs, which is only 0.6 % of the 86,251 potential Settlement Class Members who were mailed notice. *See Burrow v. Forjas Taurus S.A.*, No. 16- 21606-CIV,

---

[4] *See supra* FN 2.

2019 WL 4247284, at *10 (S.D. Fla. Sept. 6, 2019) (finding low opt-out rate weighs in favor of final approval).

Furthermore, the claims rate of 11.67% far exceeds the rate in many approved consumer class action settlements. *See Perez*, 501 F. Supp. 2d at 1377-78 (approving settlement with claims rate of approximately 1.2%); *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214 (W.D. Mo. 2017) (collecting numerous cases approving class action settlements with claims rates between ~.25% and ~2%); *Keil v. Lopez,* 862 F.3d 685, 697 (8th Cir. 2017) ("we note that a claim rate as low as 3 percent is hardly unusual in consumer class actions"). The strong claims rate further favors approval of the Settlement.

## **CONCLUSION**

Plaintiffs respectfully request that the Court grant this Motion for final approval of class action settlement.

## **CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(A), the undersigned certifies that counsel for Plaintiffs has conferred with counsel for the Defendants regarding the relief requested above, which is the relief requested in the Plaintiffs' Unopposed Motion for Final Approval of Class Settlement and Memorandum of Law in Support, and the undersigned can certify that the relief requested supported by this motion and memorandum is unopposed.

Dated: January 12, 2023                          Respectfully submitted,

/s/ Randall P. Ewing
Randall P. Ewing, Jr.
Fla. Bar No. 76879
Chad E. Bell
KOREIN TILLERY LLC
205 North Michigan Plaza, Suite 1950

Chicago, IL 60601
Phone: (312) 641-9750
Fax: (312) 641-9751
gzelcs@koreintillery.com
rewing@koreintillery.com
cbell@koreintillery.com

Stephen M. Tillery
Carol L. O'Keefe
KOREIN TILLERY LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Phone: (314) 241-4844
stillery@koreintillery.com
cokeefe@koreintillery.com

Alec H. Schultz
HILGERS GRABEN PLLC
1221 Brickell Avenue, Suite 900
Miami, Florida 33131
Telephone: 305.630.8304
Email: aschultz@hilgersgraben.com

*Counsel for Plaintiffs Nancy Taylor and
Hazel Benjamin*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing document was served on all counsel of record who have made an appearance in this matter, through CM/ECF Notice of Electronic Filing on January 12, 2023.

*/s/ Alec H. Schultz*
Alec H. Schultz
